NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EMILIO PEREZ,                            :
                                         :
              Plaintiff,           :         Civil Action No. 07-5685 (JAG)
                                         :
     v.                                :
                                         :         **OPINION**
BRUCE A. HAUCK, et al.,                  :
                                         :
              Defendants.          :
                                         :

**APPEARANCES:**

    EMILIO PEREZ, #411547, Plaintiff Pro Se
    Northern State Prison
    Newark, New Jersey 07114-0300

**GREENAWAY, JR., District Judge**

    Plaintiff Emilio Perez (hereinafter "Plaintiff"), a prisoner currently confined at Northern State Prison, Newark, New Jersey, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis, without prepayment of fees, pursuant to 28 U.S.C. § 1915. Plaintiff submitted for filing his complaint (hereinafter "Complaint"), together with an application for appointment of pro bono counsel. Plaintiff also submitted his application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a).[1] For the reasons set forth below, this Court will grant Plaintiff in forma pauperis status and will direct the Clerk to file Plaintiff's Complaint. In addition, for the reasons stated below, this Court will allow Plaintiff's claims to proceed past the sua sponte dismissal stage and direct the Clerk to appoint pro bono counsel to represent Plaintiff in the instant matter.

---

[1] Following this Court's December 18, 2007, Order, Plaintiff supplemented his affidavit of indigency with his 6-month prison account statement. Plaintiff does not have three qualifying dismissals which would preclude in forma pauperis status. See 28 U.S.C. § 1915(g).

## BACKGROUND

Plaintiff's Complaint, while pithy, is quite telling. Plaintiff asserts that, on July 22, 2007, Plaintiff was performing a food-serving duty assigned to him by the prison officials. (Compl. ¶ 6.) As Plaintiff was proceeding with his duty, Maurice Gay (hereinafter "Gay"), another inmate in the facility, jumped out of the shower (where Gay had been hiding) and attacked Plaintiff with a razor. (Id.) As a result of Gay's attack, Plaintiff suffered numerous razor cuts all over his face, neck and upper body. (Id.)

Plaintiff's Complaint states that Gay, who was placed in a high security unit had committed prior assaults on other inmates. (Id.) Moreover, Plaintiff alleges that he was denied medical treatment for his wounds although he requested medical attention from prison officials "on numerous times" after the attack.[2] (Id.) Plaintiff seeks unspecified monetary damages and injunctive relief. (Id. ¶ 7.)

Plaintiff's application for appointment of pro bono counsel is as concise as his Complaint. (Appl. for Pro Bono Counsel ¶ 3.) It reads as follows:

> I speak limited [E]nglish. . . . I have 3rd grade education in [S]panish. I have never submitted any legal papers [to] any court[,] ever. I am absolutely indigent. There will be a need for factual determinations from someone other than myself, and I believe [that,] due to security reasons, I will not be allowed to see them. I will also needan [sic] expert to show how the staff were to act.

## DISCUSSION

### A. Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110

---

[2] Apparently, after he contacted "the main office in Trenton," Plaintiff was interviewed by an investigator. Further, Plaintiff is "fearfull [sic] of retaliation for 'outing' these staff memebers [sic]" who failed to treat him. (Compl. ¶ 6.)

Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

In determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Liberally construing the statements made in Plaintiff's Amended Complaint, see Haines, 404 U.S. at 520, this Court finds that Plaintiff alleges that his Eighth Amendment rights were violated by the prison officials' failure to protect him from Gay's attack and provide Plaintiff with medical assistance for his injuries.

B.   **Eighth Amendment Claims**

    1.   **General Standard**

Plaintiff has a protected right in being incarcerated at a place of confinement conforming

to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement [and] take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see  Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).

In other words, the Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  See Rhodes, 452 U.S. at 346, 347.  "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'"  Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

    **2.**    **Tests Applicable to Failure-to-Protect and Medical Claims**

Since prison officials have a duty under the Eighth Amendment to "'take reasonable measures to guarantee the safety of the inmates,'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-7 (1984)), a knowing failure of prison officials to protect an inmate from harm inflicted by other inmates or corrections officers amounts to a violation of that inmate's Eighth Amendment rights.  Specifically, to state a failure-to-protect claim under 42 U.S.C. § 1983, the inmate must show that he was objectively "incarcerated under

conditions posing a substantial risk of serious harm" and that the defendant knew of and disregarded that risk. Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; see also Whitley v. Albers, 475 U.S. 312, 319 (1985).

Alternatively, to prevail on a medical care claim under the Eighth Amendment, the inmate must show that the defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. at 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.

### 3. Plaintiff's Allegations State Eighth Amendment Claims

In the case at bar, Plaintiff's Complaint appears to state both failure-to-protect and denial-of-medical-care claims. With respect to the former, Plaintiff alleges that Gay, who had committed prior attacks, possessed an unauthorized razor. Plaintiff further alleges that the prison staff failed to lock Gay in his cell in the high security unit, allowing Gay to hide in the shower, thus enabling his attack on Plaintiff. (Compl. ¶ 6.) Therefore, if Plaintiff's allegations are true, the prison officials could have drawn a reasonable inference that their failure to ensure that Gay was safely locked away and had no possession of a razor would allow Gay to commit another

attack. It follows that the prison officials were cognizant of the risk of harm to Plaintiff but, in violation of his Eighth Amendment rights, failed to protect him from Gay. Consequently, this Court concludes that Plaintiff's allegations sufficiently state a failure-to-protect claim.

Moreover, if Gay actually inflicted slash wounds all over Plaintiff's face, neck, and upper body, Plaintiff's multiple injuries certainly qualified as a serious medical need apparent to any lay person and required the prison officials to provide Plaintiff with speedy medical care.  Hence, the refusal of prison officials to provide any medical attention to Plaintiff immediately following the attack or at any time thereafter, if true, qualifies as deliberate indifference and a violation of Plaintiff's Eighth Amendment rights.  Therefore, this Court finds that Plaintiff's allegations sufficiently state a denial-of-medical-care claim and will proceed Plaintiff's claims past the sua sponte dismissal stage.

### C. Appointment of Pro Bono Counsel

Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  See Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law.  If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
> > (1) the plaintiff's ability to present his or her own case;
> > (2) the complexity of the legal issues;
> > (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> > (4) the amount a case is likely to turn on credibility determinations;
> > (5) whether the case will require the testimony of expert witnesses; [and]
> > (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.  Correspondingly, courts should exercise care in appointing

counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases.

Parham, 126 F.3d at 457-58 (internal citations omitted).

With respect to the first factor, i.e., the plaintiff's ability to present his or her own case, the Court of Appeals instructed district courts to "consider the plaintiff's education, literacy, prior work experience, and prior litigation experience." Tabron, 6 F.3d at 156. Courts should also consider the "degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue [such] investigation." Id.

Applying the Tabron factors to the instant case, this Court concludes that appointment of pro bono counsel is justified. While the legal issues raised in Plaintiff's Complaint appear to be relatively straightforward, the degree of factual investigation required likely will be potentially unavailable to Plaintiff due to his incarceration. Moreover, Plaintiff's severely hampered ability to express himself in English, as well as his very limited education in Spanish, indicate to this Court that Plaintiff is unlikely to be capable of pursuing his claims. Finally, Plaintiff's account statement unambiguously indicates that he is indigent and cannot afford private counsel.

Therefore, this Court finds that appointment of pro bono counsel to Plaintiff is in the interests of justice and will direct the Clerk accordingly.

## CONCLUSION

For the reasons set forth above, this Court will allow Plaintiff to proceed in this matter in forma pauperis. Plaintiff's Eighth Amendment claims will proceed to the next stage. This Court will direct the Clerk to appoint pro bono counsel to represent Plaintiff in the instant matter.

Dated: March 19, 2008

                                              S/Joseph A. Greenaway, Jr.
                                              JOSEPH A. GREENAWAY, JR., U.S.D.J.